## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SHANAH ZISHKA, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TOYOTA MOTOR CORPORATION, and TOYOTA MOTOR SALES, U.S.A., INC., | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Shanah Zishka ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, alleges the following facts and claims upon knowledge as to matters relating to herself and upon information and belief as to all other matters and, by way of this Class Action Complaint, avers as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.       This is a class action brought by Plaintiff on behalf of herself and a class of current and former owners and lessees of certain Toyota vehicles (the "Class Vehicles"[1]) against Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota") seeking redress for damage resulting from the inclusion of soy-based materials in Class Vehicles. Specifically, Toyota incorporated soy-based materials or components in Class Vehicle electrical wiring systems

---

[1] As used herein, the term "Class Vehicles" refers to at least the following Toyota vehicles, upon information and belief: 4Runner (2011-2016); Avalon (2013) Camry Hybrid (2012-2013); Camry (2009-2016); Corolla (2014-2016); FJ Cruiser (2014); Highlander (2009, 2012, 2015); Matrix (2009); Prius (2010-2015); Prius C (2012-2015); Prius V (2012-2015); Rav4 (2008-2016); Scion TC (2014-2016); Sequoia (2015); Sienna (2011-2014); Tacoma (2014, 2015); Tundra (2007-2016); and Venza Ltd. (2010, 2013). Plaintiff reserves the right to amend or add to the vehicle models and model years included in the Class Vehicles after conducting discovery.

that bait rodents – including rats, squirrels, and other pests – to the vehicles and entices them to chew through, eat, or otherwise damage and compromise the wiring (the "Defect"). As a result, the Class Vehicles' electrical and other operational systems are damaged and/or cease to function, leaving the vehicles partially or completely inoperable.

2.     As the numerous complaints posted on the National Highway Traffic Safety Administration ("NHTSA") website and other consumer resources reveal, rodents are uniquely attracted to the Defect in the Class Vehicles.

3.     Despite the fact that Toyota is aware or should be aware of the Defect, Toyota has failed to disclose the Defect to Class Vehicle purchasers and lessees, and it routinely refuses to repair the Class Vehicles under its New Vehicle Limited Warranty (the "Warranty") that it issues with each Class Vehicle purchase or lease. Current and former Class Vehicle owners and lessees should not be required to bear the costs of the Defect, nor should they be required to bear the risk of future out-of-warranty problems for damaged soy-based wiring.

4.     As a result of the Defect and the monetary costs associated with repairs, Plaintiff and Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct.

5.     Accordingly, Plaintiff Zishka seeks recovery for monetary and equitable relief for Toyota's breach of its Warranty, breach of the implied warranty of merchantability, violations of the Magnusson Moss Warranty Act, and violations of Colorado's consumer protection laws. Plaintiff also seeks recovery based upon Toyota's unjust enrichment, and declaratory relief as further described herein.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, (ii) Defendants are citizens of another State.

7.      Venue is properly set in this District pursuant to 28 U.S.C. § 1391(b). Toyota does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District and resides here for venue purposes.

**PARTIES**

8.      Plaintiff Shanah Zishka ("Plaintiff Zishka") is a citizen of the state of Colorado and currently resides in Colorado Springs, Colorado.

9.      Toyota are automobile design, manufacturing, distribution, and/or service corporations doing business within the United States. Furthermore, Toyota designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles including the Class Vehicles.

10.     Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation.  TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc. TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota automobiles at numerous other locations across the United States, including Colorado.

11.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in California. TMS is TMC's United States sales and marketing division, which oversees sales and other operations across the United States, including Colorado. TMS distributes

Toyota vehicles and sells these vehicles through its network of dealers. Money received from the purchase of a Toyota vehicle from a dealership flows from the dealer to TMS.

12.     TMS and TMC sell Toyota vehicles, including Scion vehicles,[2] through a network of dealerships that are the agents of TMS and TMC.

13.     There exists, and at all times herein existed, a unity of ownership between TMS, TMC, and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

14.     Upon information and belief, TMC communicates with TMS concerning virtually all aspects of the Toyota products it distributes within the United States.

15.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the soy-covered or soy-based components and parts within the Class Vehicles were performed exclusively by TMS and TMC.

16.     Toyota engages in continuous and substantial business in Colorado, including making substantial sales and leases of Toyota automobiles.

17.     Plaintiff alleges that at all times mentioned herein, TMS and TMC were acting as an agent and/or employee of each other, and at all times mentioned were acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of the other. In addition, each of the acts and/or omissions of TMS and TMC alleged herein were made known to, and ratified by, the other.

_____

[2] Scion was a marque line of automobiles from Toyota until it was discontinued in February 2016.

## FACTUAL ALLEGATIONS

### A.    The Defective Soy-Based Insulated Wiring within Class Vehicles

18.    Electrical wiring is ubiquitous in modern automobiles. A vehicle's electrical wiring connects the various critical, and non-critical, vehicle systems. The wire creates circuits that must stay intact in order for the vehicle to function as intended.

19.    Electrical systems in an automobile deliver and monitor electrical power to various devices and sensors in the vehicle. An automobile's electrical system is complex and is made up of many different components. The battery is the center of and powers the electrical system. The electrical system is made up of a web of connected wires, fuses, and relay systems. This wiring carries the current supplied by the car battery and directs it to various vehicle components. When an electrical component in an automobile is not working correctly, it is often caused by an open circuit, which can result from a broken or compromised wire or wire connection. When this occurs, vehicle functions that are imperative to safe vehicle operation – *e.g.* headlights, brake lights, windshield wipers, power windows, defrosters – may not work properly. This is because when electrical wiring is disconnected or compromised, circuits are broken causing systems connected to those circuits to partially or completely fail.

20.    Historically, automobile wiring was coated or covered with a glass, plastic or polymer-based insulation. However, over the past decade or so, and especially in light of skyrocketing oil prices in the mid- to late-2000s, there has been a dramatic downshifting in automotive manufacturing which has spurred automobile manufacturers to explore new materials to decrease cost and make more parts recyclable. As a result, automobile manufacturers, including

Toyota, migrated from petroleum-based wire insulation to soy-based insulation because it became considerably less expensive and is purportedly more environmentally-friendly, as it is biodegradable.

21.     Wiring insulation is an imperative line of defense to protect the integrity of electrical wiring in automobile electrical systems.  But Toyota made the decision to switch its wiring insulation to a soy-based material – which invites, rather than protects against, electrical wiring issues and concerns, as set forth herein – and it did so not in the name of "going green" but rather in the name of profit and cost-cutting.

22.     Irrespective of Toyota's business justifications, the transition to soy-based insulation has created a bed and breakfast for rodents and other animals and pests under the hoods of Class Vehicles at the expense of Class members. Rodents and other animals are uniquely attracted to soy in Class Vehicles. The inclusion of soy-based materials in Class Vehicle electrical wiring and wiring components attracts rodents and other animals that nest under the hoods of Class Vehicles and feast on the soy insulation and electrical wires, thereby compromising the integrity of Class Vehicle electrical systems and rendering Class Vehicles fully or partially inoperable. Automobile electrical wiring does not have to be entirely chewed through to jeopardize the functionality of the wiring system: rather, mere exposure of the wires can make a vehicle unfit for use.

23.     The image below depicts substantial rodent damage to the main engine wiring harness in a 2014 Toyota 4Runner, which purportedly caused $5,500 in damage:[3]

---

[3] See http://www.synlube.com/IncredibleEdibleCar1.htm (last visited Nov. 23, 2016).

6



24.     The safety concerns raised by wiring damage (such as that depicted above) and failures in automobile electrical systems are obvious, and Toyota's continued use of soy-based wiring insulation poses a legitimate threat to the safety of Plaintiff, Class members, prospective purchasers or lessees of Class Vehicles, and other drivers on the road.

25.     As the image above makes clear, soy-based insulated wiring is not suitable for its intended purpose – to protect vehicle wiring and circuitry in order to keep the vehicle operational and safe.

**B.      Toyota's Knowledge of the Soy-Based Insulted Wiring Defect**

26.     Toyota was aware or should have been aware of the Defect in Class Vehicles through (1) its own records of customers' complaints; (2) dealership repair records; (3) NHTSA records; (4) warranty and post-warranty claims; (5) internal durability testing; and (6) other various sources. Despite its knowledge, Toyota failed to notify consumers of the nature and extent of the Defect and/or provide any adequate remedy under the Warranty.

27.    Toyota is also aware or should have been aware of the Defect, because its agents, dealers, or other representatives routinely and consistently refuse to provide Warranty coverage for damage to Class Vehicles resulting from the Defect. Instead, Toyota, through its agents, dealers, or other representatives, compel consumers to either pay the costs of repair out-of-pocket or to make an insurance claim and pay a deductible.

28.    Furthermore, the defective nature of the soy-based wiring has been widely publicized and known within the automotive industry generally and to Toyota specifically.

29.    A number of news stations across the United States have done consumer interest stories on soy wiring in automobiles, reporting on how the inclusion of soy materials or ingredients in automobiles attracts pests and causes damage. One news media outlet that claims to be leading a nationwide investigation into this very issue reports (among other findings) the following:

> "Many new vehicles now use wiring that has a soy-based coating, which is better for the environment and cheaper to make than the traditional kind. But apparently, rodents love to gnaw on it, which can cause major electrical problems."[4]

30.    An investigator from that news station reported that he contacted Toyota about the soy wiring issue, to which a representative of Toyota – Amanda Rice, a Business Communications Specialist at Toyota Motor Sales, U.S.A., Inc. – responded by denying that a problem existed, stating that, "Rodent damage to vehicle wiring occurs across the industry and the issue is not brand- or model-specific. We are not aware of any confirmed connection between wiring materials and rodent damage."[5]

---

[4] Jason Stoogenke, Action 9 leads national investigation into rodents chewing on vehicle wires, WSOCTV, Jun. 3, 2016, http://www.wsoctv.com/news/9-investigates/rodents-chewing-on-vehicle-wiring/235719735 (last visited Nov. 23, 2016).
[5] *See id.*, embedded video, at 2:13.

31.     Consumer media websites have also tracked the propensity of soy-based wiring insulation and coatings to attract rodents and result in damage.[6] Honda – one of Toyota's primary competitors – is reportedly "convinced" that there is a problem with its own soy-based insulation and reportedly made plans to introduce a spicy chemical to its wiring to stop rodents from eating it.[7]

32.     Unlike Honda, Toyota has taken no similar measures or actions. Instead Toyota has turned this Defect into another source of income for itself and its dealers by charging Class Vehicle owners for repairs (or charging for purchase and installation of repellants, traps, and other preventive measures) to deal with the adverse consequences of its soy-based wiring insulation that Toyota should, itself, be covering under warranty.

33.     Toyota has evaded and continues to evade its Warranty obligations by failing to tell consumers that their Class Vehicles are defective and by claiming that the susceptibility to rodent damage is "environmental" and not a result of the Defect which requires Warranty repairs or replacements.

34.     However, as the consumer complaints below demonstrate, environmental conditions are not the root cause of the Defect – rather, the environmentally-friendly and less expensive soy-based coating is the problem.  While Class Vehicles are essentially being attacked by rodents and other animals, older vehicles with non-soy-based insulated wires that are exposed to similar environmental conditions do not experience rodent-caused damage.

---

[6] *See, e.g.*, Jenn Strathman, Mechanics Say Soy In Car Wiring Attracts Munching Mice, So Honda Created A Solution, WPTV, Nov. 6, 2013, http://www.wptv.com/money/consumer/mechanics-say-soy-in-car-wiring-attracts-munching-mice-so-toyota-created-a-solution (last visited Nov. 23, 2016) (a Toyota Tundra purchaser experienced engine trouble due to rodent eating his wires); Jason Stoogenke, Action 9 Leads National Investigation Into Rodents Chewing On Vehicle Wires, WSOCTV, updated June 3, 2016, http://www.wsoctv.com/web/wsoc/news/9-investigates/rodents-chewing-on-vehicle-wiring/235719735 (last visited Nov. 23, 2016) (recounting the story of a purchaser of a brand new Toyota Camry who could not turn on her engine because rodents ate the soy wiring in her vehicle).

[7] Tim Esterdahl, Mice Eat Toyota Tundra Wires – True Story, Nov. 8, 2013, http://www.tundraheadquarters.com/blog/mice-eat-wires/ (last visited Nov. 23, 2016).

35.     The prevalence of complaints across the country from Toyota lessees and owners and the high volume of media and consumer watchdog coverage of this soy wiring issue highlight the disingenuous nature of Toyota's denial of (a) the existence of the Defect and (b) a connection between soy wiring in Class Vehicles and rodent damage.

36.     Toyota has known (or it should have known) that soy-based wiring insulation attracts rodents that damage Class Vehicles. In fact, employees at Toyota dealerships routinely inform consumers that rodent damage is very common. Yet, notwithstanding its knowledge of the Defect, Toyota consistently refuses to repair the Class Vehicles under the Warranty when the Defect manifests.

### C.     Toyota's New Vehicle Limited Warranty

37.     Despite Toyota's knowledge of the Defect, it refuses to honor its Warranty. The Warranty covers necessary repairs for defects in materials or workmanship: "This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Scion, subject to the exceptions indicated under 'What Is Not Covered' . . . ." *See* Plaintiff Zishka's 2015 Scion TC Warranty and Maintenance Guide, at p. 13, attached hereto as **Exhibit "A."** Thus, the Warranty covers *any* defect unless the defect is listed as an exception.

38.     The Warranty exceptions, however, are not applicable to the defective soy-based insulated wiring. The exceptions to the Warranty include: tires, normal wear and tear, maintenance expense, vehicles with altered odometers, salvage or total-loss vehicles, and incidental damages. *See* Ex. A, at p. 14-15. Toyota routinely cites to the "other environmental conditions" exception in its Warranty to deny coverage for the Defect repairs. The Warranty specifically excludes damage from "[a]irborne chemicals, tree sap, road debris (including stone chips), rail dust, hail, floods, wind storms, lightning and other environmental conditions"; however, Toyota's voluntary inclusion of soy-based wiring and wiring materials in Class Vehicles does not constitute an environmental condition.

10

39.    Soy-based insulated wiring and wiring components are not an "environmental condition." Unlike the other environmental exclusions under the Warranty for conditions or occurrences that naturally exist or occur in the environment, Toyota created this problem by including soy materials in the manufacturing process for Class Vehicles. Thus, the Defect is not an independent environmental issue; rather, the Defect is the inclusion of soy-based materials in Class Vehicles and the intrinsic nature of the soy-based materials to attract rodents, which exists in Class Vehicles at the time of manufacturing and when Class Vehicles leave manufacturing locations. Furthermore, the Warranty does not expressly or impliedly disclaim Warranty coverage for rodent damage in Plaintiff's Class Vehicle and the same is true for the Warranties that cover all Class Vehicles. If Toyota had wanted to exclude rodent damage from Warranty coverage, it could have done so, just as it did for, e.g. tree sap damage. But Toyota did not exclude this damage. Toyota should not now be allowed to rely on the "other environmental conditions" language in its Warranty exclusions – language which clearly relates to other weather- and climate-related conditions that (unlike hail, flood, wind, storms, lightning, etc.) are not explicitly identified in that section – to escape its Warranty obligations to consumers.

40.    Notwithstanding its obligation under its Warranties, Toyota has repeatedly denied Warranty coverage to Plaintiff and Class members. Toyota routinely informs consumers, inter alia, that rodent damage is an environmental condition that is not covered under the Warranty. Toyota is deflecting its obligations under the Warranty by labeling the Defect – which Toyota has knowledge of or should have knowledge of – as something it is not. Toyota has refused to cover the costs of repairs due to rodent damage to soy-based insulated wiring. Thus, Plaintiff and Class members were and are forced to pay out of pocket for repairs and services that should have been covered under Toyota's Warranty.

### D.    Other Consumers Have Similar Experiences and Complaints

41.    Plaintiff's experiences are by no means isolated or outlying occurrences.  Indeed, the internet is replete with examples from blogs and other websites where Toyota customers have complained of rodents chewing through their vehicles' soy-based wire insulation, sometimes on multiple occasions.

42.    For example:

- From May 3, 2013, user HauKrazee posted on http://www.toyota-4runner.org/5th-gen-t4rs/141251-broken-2010-4runner-rodents.html#post1371287, (last visited on Oct. 3, 2016):

**Broken 4Runner - Rodents**

Alright, two days ago I come home from the store and my 4Runner was parked for less than 2 hours at my parents home. It was snowing after a day of 70 degree weather. I go outside and 4Runner starts up, but idles very rough as if the engine was constantly misfiring. I leave my car there overnight and call the tow truck in the morning.

When the tow truck arrives in the morning, I try and start the 4Runner and move it for the tow truck... the engine fails and shuts off as black smoke comes out of the exhaust... the 4Runner dies. The tow truck takes it to the nearest dealership because I thought at the time it was something wrong that could have been covered under warranty since it is still under 36 months or 30,000 miles.

The dealership checks it out and approx 4 wires have been chewed up by some rodent (Pictures attached)... not covered under warranty.

 

- From March 3, 2012, user ChristyMcCool posted on http://www.customtacos.com/forum/22-off-topic/155429-squirrels-rats-chewing-tacoma-wiring.html, (last visited on Oct. 3, 2016):

**Squirrels & rats chewing Tacoma wiring!**

The entire wiring harness on my Toyota Tacoma has been replaced twice in the last month from squirrels chewing up the wiring. The cost is enormous--$3400 each time. Insurance covered it both times, but said they wouldn't a third time.

43.     Complaints on the NHTSA website reveals that many consumers have experienced wire damage as a result of rodents and other animals chewing the soy-based portions of the wiring in multiple Toyota models—including but not limited to: 4Runner (2012, 2015, 2016); Avalon (2013); Camry Hybrid (2012); FJ Cruiser (2014); Prius (2010); Prius C (2012); Prius V (2012); Rav4 (2008, 2014, 2015); Sequoia (2015); Sienna (2012); Tacoma (2014, 2015); and Tundra (2011).

44.     The consumer complaints to NHTSA are evidence of a widespread problem. Representative examples of complaints on the NHTSA website regarding the Class Vehicles are included below (with emphasis supplied in capitalized bold, underlined letters):[8]

**Date of Incident:** 06/02/2016
**Date Complaint Filed:** 06/05/2016
**NHTSA/ODI ID:** 10872591
**Model:** 2015 Tacoma
        **SUMMARY:**
        MY TRUCK WAS RECENTLY DAMAGED FROM RODENTS, THEY BUILT A
        NEST BY ENGINE AND CHEWED WIRES. AFTER FURTHER RESEARCH I
        FOUND THAT AUTO MANUFACTURERS IN ORDER TO GO GREEN ARE USING
        SOY BASED PRODUCTS ON WIRES INSTEAD OF PETROLEUM. THEY ARE
        USING SUGAR IN THERE PLASTICS. RICE HUSKS IN THERE INTERIORS. ALL
        THIS STUFF ATTRACTS RODENTS. THIS IS UNACCEPTABLE! **MY
        DEALERSHIP SAID THEY ARE SEEING AT LEAST 2 RODENT DAMAGED
        VEHICLES A WEEK.** MY TRUCK IS DRIVEN DAILY AND SITS NO LONGER
        THAN 8 HOURS. **THE TOTAL DAMAGE ON A BRAND NEW TRUCK WITH
        EXTENDED WARRANTY WAS 2700 OUT OF POCKET, THIS DAMAGE WAS
        NO COVERED BY WARRANTY.**


**Date of Incident:** 04/17/16
**Date Complaint Filed:** 04/17/2016
**NHTSA/ODI ID:** 10859964
**Model:** 2012 4Runner
        **SUMMARY:**
        SQUIRRELS KEEP EATING MY ELECTRICAL WIRING AND THE WIRING
        HARNESS. THEY ACCESS THE ENGINE BAY THROUGH THE OPENINGS IN
        THE WHEEL WELLS AFTER JUMPING ON TOP OF THE TIRES. THE RESULTS

---

[8] The foregoing complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original authors of the complaints.

HAVE DISABLED MY ABS, 4WD, LIMITED SLIP, ETC. **I'VE TRIED RODENT REPELLENT, FOX URINE, AND PARKING IN THE GARAGE. NOTHING HELPS.** TOYOTA NEEDS TO STOP USING SOY BASED WIRING, AND THEY NEED TO CLOSE THE HOLES IN THE WHEEL WELLS.

**Date of Incident:** 3/01/2016
**Date Complaint Filed:** 03/03/2016
**NHTSA/ODI ID:** 10839755
**Model:** 2014 FJ Cruiser
SUMMARY:
KNOWN PROBLEM BY MANUFACTURERS. **EXTREME DAMAGE TO WIRING HARNESS AND COMPONENTS WITHIN ENGINE COMPARTMENT BY RODENT.** VEHICLE HAS 13,837 MILES ONLY. NEW WIRING STANDARDS REPORTEDLY DRAW RODENTS AND/OR INCREASE AMOUNT OF DAMAGE TO VEHICLE SYSTEMS. VEHICLE WAS PARKED LESS THAN 7 HOURS AND WHEN TURNED IGNITION TO VEHICLE, INSTRUMENT PANEL ILLUMINATED EVERY SAFETY WARNING TO INCLUDE ENGINE LIGHT FLASHING. ENGINE SPUTTERED AND REQUIRED TOW. **INSURANCE COMPANY REPORTS HIGH NUMBER OF CLAIMS ESPECIALLY RELATED TO NEWER CARS WITH WIRING. DAMAGE TO WIRING IF DRIVEN COULD CAUSE VEHICLE SYSTEMS TO FAIL, FIRE AND COULD CAUSE GRAVE RISK OF INJURY OR DEATH TO OPERATOR AND PASSENGERS. MANUFACTURER DOES NOT COVER IN WARRANTY NOR PROVIDES PREVENTIVE REMEDY TO ISSUE.**

**Date of Incident:** 10/30/2015
**Date Complaint Filed:** 10/30/2015
**NHTSA/ODI ID:** 10787185
**Model:** 2012 Sienna
SUMMARY:
ALL UNDERWOOD COMPONENTS ARE NOT ONLY VULNERABLE, BUT ATTRACTIVE TO RODENTS. WHILE PARKED OVERNIGHT **ON 4 CONSECUTIVE NIGHTS, RODENTS HAVE CHEWED THROUGH WIRES DESPITE ATTRACTIVE RODENT POISON IN THE ENGINE BAY, THE POISON IS UNTOUCHED AND THE WIRES ARE ATTACKED EVERY NIGHT.** TO DATE INJECTOR WIRES, SENSOR SIRES, FUEL PUMP WIRES HAVE BEEN COMPROMISED, INCLUDING SENSORS FOR THE STABILITY CONTROL SYSTEM, WHICH IS DISABLED. **I REPAIRED DAMAGE BY RUNNING NEW WIRES, CLEARING NESTS AND SET TRAPS AND POISON, BUT NOW THE THE FUEL SYSTEM HAS BEEN ATTACKED AND THE FUEL PUMP DOES NOT ACTIVATE. 3 OTHER CARS PARKED IN THE SAME LOCATION FOR THE PAST 5 MONTHS ARE UNTOUCHED. SAFETY SYSTEMS ARE LIKELY TO BE COMPROMISED FOR ANY PERSON WHO MUST PARK THESE OUTDOORS.**

14

**Date of Incident:** 10/26/2015
**Date Complaint Filed:** 10/27/2015
**NHTSA/ODI ID:** 10786504
**Model:** 2014 Rav4
> **SUMMARY:**
> THE ELECTRICAL WIRING WAS EATEN BY A RODENT. THE RODENT MADE A NEST IN THE ENGINE AREA AFTER EATING THE WIRES. **THE REPAIR OF THE VEHICLE IS COSTING US $1510 PLUS A RENTAL CAR.**

**Date of Incident:** 09/30/2015
**Date Complaint Filed:** 10/05/2015
**NHTSA/ODI ID:** 10779880
**Model:** 2015 Rav4
> **SUMMARY:**
> **AFTER 10 DAYS OF OWNING THE CAR AND LESS THAN 600 MILES THE CAR WOULDN'T RUN AND WE HAD TO HAVE IT TOWED TO THE DEALERSHIP.** THEY SAID IT WAS **NOT UNDER WARRANTY** AND THAT **THE DAMAGE WAS CAUSED BY A RODENT.** LATER THAT SAME EVENING OUR SALESMAN CALLED AND INFORMED US THAT COMPONENTS IN THE CAR ARE "GREEN" AND MADE OF SOYBEAN AND TO KEEP OUR CAR IN THE GARAGE (WHICH WE DON'T HAVE). I HAVE SINCE CAUGHT A MOUSE UNDER THE HOOD OF THE VEHICLE WITH A GLUE TRAP AND FOUND HAIR AND MOUSE DROPPINGS. THE BEST OFFER THEY HAVE GIVEN ME IS TO GIVE ME A DIFFERENT TOYOTA VEHICLE AT COST (AND TAKE THE LOSS ON MY CURRENT VEHICLE). I HAVE COMPLAINED TO BOTH THE DEALERSHIP AND TO TOYOTA. **I HAVE HAD TWO OTHER VEHICLES PARKED IN WITHIN THE SAME PROXIMITY FOR OVER TWO YEARS. I HAVE NEVER HAD RODENT ISSUES WITH EITHER OF THEM AND I RUN INTO ISSUES WITHIN THE FIRST 10 DAYS WITH A NEW VEHICLE. I AM CONCERNED FOR THE SAFETY OF MY WIFE AND TWO YEAR OLD CHILD.** IF THERE ARE MICE LIVING INSIDE THE CAR, THEY COULD BE LEAVING RAT DROPPINGS THAT COULD BE HARMFUL TO BOTH OF THEM. I AM ANGRY AND CONCERNED AND DON'T UNDERSTAND WHY, WHEN OTHER VEHICLES PARKED IN THE SAME LOCATION AREN'T EXPERIENCING THE SAME PROBLEM, THIS ISN'T A VALID REASON TO RETURN THE CAR. HERE ARE TWO ARTICLES THAT DETAIL THE PROBLEM MYSELF AND OTHER TOYOTA OWNERS HAVE HAD - HTTP://CTWATCHDOG.COM/FINANCE/RODENTS-DAMAGE-CARS-BY-CHEWING-ELECTRICAL-CONNECTIONS-TIPS-ON-HOW-TO-AVOID-COSTLY-REPAIRS, HTTP://WWW.SYNLUBE.COM/INCREDIBLEEDIBLECAR1.HTM

**Date of Incident:** 09/04/2015
**Date Complaint Filed:** 09/13/2015

**NHTSA/ODI ID:** 10763422
**Model:** 2015 4Runner
> **SUMMARY:**
> RODENT CHEWED THROUGH INJECTOR 3 WIRE. 4 DAYS LATER, AFTER I PAID FOR THE FIRST REPAIR...SEVERAL OTHER WIRES WERE CHEWED THROUGH. THE PREVIOUS CONNECTOR REPAIRED WITH "RODENT DETERRENT TAPE" WAS NOT DAMAGED.


**Date of Incident:** 03/12/2015
**Date Complaint Filed:** 03/14/2015
**NHTSA ID/ODI:** 10694252
**Model:** 2011 Tundra
> **SUMMARY:**
> MY VEHICLE FIRST HAD ITS WIRING HARNESS DESTROYED BY A RODENT OF SOME SORT A COUPLE OF WEEKS AGO. AFTER SENDING IT TO THE REPAIR SHOP AND **$7000 DOLLARS LATER**, I BROUGHT MY TRUCK HOME AND EVERYTHING WORKED FINE. I TRIED MANY REMEDIES TO DISCOURAGE THE RODENTS FROM RETURNING BUT NOTHING SEEMS TO DETER THEM FROM THE SOY BASED INSULATION ON MY TRUCKS WIRING HARNESS. **I NOW HAVE TO SEND MY TRUCK BACK FOR REPAIRS TO THE SAME WIRING HARNESS ($7000) AS BEFORE**, AND ALSO ANOTHER WIRING HARNESS WHICH WILL PROBABLY COST CLOSE TO THE SAME. HOW CAN TOYOTA GET AWAY WITH MAKING INSULATION OUT OF RODENT FOOD WHEN THESE WIRES OPERATE THE ABS BRAKING SYSTEM? **THIS PRACTICE NOT ONLY PUTS A FINANCIAL BURDEN ON THE OWNER BUT ALSO COMPROMISES THEIR SAFETY**. *TR


**Date of Incident:** 11/07/2012
**Date Complaint Filed:** 11/08/2012
**NHTSA/ODI ID:** 10483685
**Model:** 2010 Prius
> **SUMMARY:**
> 2010 TOYOTA PRIUS AT DEALERSHIP FOR 25000 MILE SERVICE. ON 11/07/2012 AT 1700 THE **DEALERSHIP CALLED AND REPORTED THAT THE CAR IS "INFESTED WITH RODENTS."** STATED THAT HEADLINER IS SATURATED WITH URINE/ FECES, AIR AND CABIN AIR FILTERS DESTROYED, WIRES CHEWED, RODENTS FOUND TO BE LIVING IN DASHBOARD, IN DOOR INTERIORS, AND OTHER AREAS. REPORTED THAT THIS WAS "THE WORST CASE WE'VE SEEN." CAR IS OWNED BY TWO PROFESSIONALS- NO CHILDREN WHO WOULD HAVE DROPPED FOOD AND NO FOOD EVER EATEN IN VEHICLE. PURCHASED NEW FROM THIS SAME DEALERSHIP 01/02/2011. **DEALERSHIP NOW REPORTS THAT THE CAR IS A HEALTH/ SAFETY HAZARD AND COULD COST "THOUSANDS" TO REPAIR**. OUR INTERNET RESEARCH REVEALED THAT RODENT

INFESTATION IS COMMON IN THE TOYOTA PRIUS, REPORTEDLY BECAUSE RODENTS ARE ABLE TO GAIN EASY ACCESS THROUGH THE CAR'S VENTILATION SYSTEM. OWNERS REPORTED CONTACTING TOYOTA, WHO DENIED LIABILITY AND DENIED REQUEST FOR ASSISTANCE. *TR

**Date of Incident:** 08/24/2012
**Date Complaint Filed:** 04/30/2013
**NHTSA/ODI ID:** 10510017
**Model:** 2012 Prius V
    **SUMMARY:**
    I AM FILING A CLAIM TO NOTIFY OTHER CONSUMERS ABOUT AN ONGOING ISSUE I'VE EXPERIENCED WITH MY 2012 TOYOTA PRIUS V. WE PURCHASED THE CAR IN JANUARY 2012 AND **SINCE THEN WE'VE HAD 3 INCIDENTS (THAT WE KNOW OF) IN WHICH RODENTS HAVE INFESTED OUR VEHICLE**. . THE FIRST INCIDENT OCCURRED (AUGUST 2012), WE BROUGHT IT TO THE DEALERS ATTENTION AND WERE TOLD THERE WAS NOTHING THEY COULD DO BUT WE COULD CONTACT TOYOTA HEADQUARTERS. THE DEALER DETERMINED THAT THE RODENT HAD CLIMBED IN TO THE REAR OF THE VEHICLE THROUGH AN AIR VENT, AND CHEWED THE WIRES OF THE REAR HARNESS SYSTEM (THE WIRING SYSTEM THAT AFFECTS THE HYBRID TECHNOLOGY). THE ESTIMATED REPAIR WAS $2 - 3K. AFTER CONTACTING TOYOTA HEADQUARTERS, I WAS TOLD TOYOTA DOES NOT CONSIDER THIS TO BE A DEFECT IN THE DESIGN OF THE CAR OR A SAFETY ISSUE. **I WAS TOLD IT WAS AN ENVIRONMENTAL ISSUE AND I NEEDED TO DO SOMETHING TO CORRECT MY SURROUNDINGS.** THEY ADVISED THAT I OPEN A CLAIM WITH MY INSURANCE PROVIDER TO COVER THE COSTS FOR THE REAR HARNESS WIRING DAMAGE. AFTER RESEARCHING THIS, IT APPEARS THERE ARE 6 OPENINGS/GAPS WITHIN THE VEHICLE THAT RATS CAN GET INTO TO ACCESS THE INTERIOR CABIN. **NEITHER TOYOTA OR THE DEALERSHIP OFFERED TO BLOCK/COVER THESE VENTS TO PREVENT ANY FUTURE ATTEMPTS BY A RODENT GETTING IN. THEY DIDN'T OFFER ANY SUGGESTIONS OR ADVICE AS TO WHAT I SHOULD DO TO PREVENT THIS.** THIS MORNING (APRIL 27, 2013) WE WOKE UP AND REALIZED THE RODENTS HAD ENTERED THE VEHICLE AGAIN, THIS TIME CHEWING UP MY CHILD'S CAR SEAT AND THE LEATHER OF THE REAR SEATS. THERE ARE NUMEROUS PEOPLE THAT HAVE EXPERIENCED THIS ISSUE DATING BACK TO 2007 AND YET TOYOTA HAS DONE NOTHING TO REPAIR THIS DESIGN/SAFETY FLAW. FOLLOWING IS A LINK TO A PRIUS FORUM WHERE PRIUS OWNERS COMPLAIN OF THIS ISSUE: HTTP://PRIUSCHAT.COM/THREADS/TOYOTA-CLAIMS-NOT-AWARE-OF-MOUSE-PROBLEM.113690/ . *TR

**Date of Incident:** 08/21/2013
**Date Complaint Filed:** 05/19/2014

**NHTSA/ODI ID:** 10592353
**Model:** 2012 Camry Hybrid
 **SUMMARY:**
 NO MATTER WHERE I PARK RODENTS ARE FINDING WAYS TO GET INTO
 MY CAR. I DO NOT KEEP FOOD IN THE CAR AND I HAVE DONE SEVERAL
 DIFFERENT THINGS TO PREVENT THEM GETTING IN. INCLUDING MOVING
 MY CAR AROUND TO PLACES OTHER THAN MY DESIGNATED COVERED
 PARKING SPOT. MY DEALER HAS TOLD ME TO PISS OFF. AS HAS TOYOTA,
 BUT IT WOULD APPEAR THAT TOYOTA SWITCHED OVER TO MORE
 ENVIRONMENTALLY FRIENDLY INSULATION MATERIALS IN RECENT
 YEARS. I PURCHASED THIS 2012 TOYOTA CAMRY BRAND NEW. THIS HAS
 BEEN GOING ON FOR TWO YEARS NOW AND IT WOULD APPEAR I'M NOT
 THE ONLY PERSON EXPERIENCING THIS AS IS APPARENT FROM THE LINKS
 BELOW. I HAVE EXTENSIVE PICTURES OF WHAT HAS HAPPENED TO MY
 CAR. **THIS ALSO HASN'T BEEN AN ISSUE FOR ANY OF THE OTHER
 VEHICLES IN MY PARKING LOT AND MY PREVIOUS CAR WAS PARKED
 THERE FOR YEARS WITHOUT ISSUE (A DIFFERENT MANUFACTURER). I
 ALSO PARK OUR OLDER TOYOTA MATRIX (2003) AND TOYOTA MR2
 SPYDER (2000) IN THAT SPOT AND I HAVE NOT HAD ANY ISSUES WITH
 EITHER VEHICLE.** I BELIEVE OUR OLDER TOYOTA MODELS HAVE VERY
 DIFFERENT MATERIALS THAT AREN'T AS ATTRACTIVE TO RODENTS. I
 FIRMLY BELIEVE THIS HAS TO DO WITH TOYOTA'S MOVE TO MORE
 ENVIRONMENTALLY FRIENDLY MATERIALS. JUST TONIGHT I FINALLY
 HAVE HAD ENOUGH BECAUSE THESE CREATURES CHEWED INTO MY
 TRUNK AND WERE CHEWING UP THE MATERIALS IN MY TRUNK NEAR THE
 HYBRID BATTERY. **I'M PARKED IN A COMPLETELY DIFFERENT AREA
 AND IT'S STILL HAPPENING.** THIS ISN'T A COINCIDE! **I HAVE SOME
 SERIOUS HEALTH AND SAFETY CONCERNS HERE.** I WAS READING
 ABOUT ANOTHER OWNER THAT HAD RODENTS GET INTO THEIR NEW
 TOYOTA PRIUS THAT ATE THE PASSENGER AIRBAG AND DID OVER $10,000
 IN DAMAGES! THIS NEEDS TO BE INVESTIGATED ASAP.
 HTTP://WWW.TOYOTANATION.COM/FORUM/152-VENZA-FORUM/359615-
 RODENT-PATROL-AGAINST-DAMAGE.HTML
 HTTP://PRIUSCHAT.COM/THREADS/TOYOTA-CLAIMS-NOT-AWARE-OF-
 MOUSE-PROBLEM.113690/PAGE-2#IXZZ32AWYYLOL *JS

## PARTICULARIZED FACTUAL ALLEGATIONS AS TO PLAINTIFF ZISHKA

45.    In or about October 6, 2014, Plaintiff Zishka purchased a new 2015 Scion TC from

Stevinson Toyota West, an authorized Toyota dealer in Lakewood, Colorado. Her Class Vehicle

bears the following VIN: JTKJF5C79F3090709.

46.    Plaintiff uses her Class Vehicle for personal, family, and/or household uses.

18

47.     On or about August 22, 2016, Plaintiff noticed that her dashboard display for her transmission was not working.  As she drove her Class Vehicle home, she attempted to put the car in manual shift mode, but was unable to do so.

48.     The following morning, on August 23, the dashboard display and manual shift mode were still not working. On her drive to work that day, Plaintiff's check engine light came on and traction control shut off. She called her local Toyota dealer – Larry H. Miller Toyota – to arrange to drop off her car, which she did on August 31.

49.     After a series of appointments with the dealer, Plaintiff received a call on September 12 indicating that the transmission range switch was damaged and needed to be replaced. Plaintiff opted to leave her car with the dealer until Friday, September 16, as the dealer was waiting for a part to arrive.

50.     On the morning of September 16, Plaintiff received a call from the dealer informing her that they had replaced the transmission range switch and the issue was still occurring.

51.     After further inspection, the Toyota dealer discovered that Plaintiff's wiring harness had been chewed by rodents.

52.     While the transmission range switch repair was covered under warranty, Plaintiff was charged $193.64 for service and repairs to the wiring harness.

53.     Notably, when Plaintiff went to pick up her Class Vehicle, the dealer's service department said that the wiring harness is made of soy which attracts rodents. Plaintiff was also told that the wiring harness is near the exhaust pipe, which is appealing to rodents because the exhaust pipe is warm.

54.     Toyota refused to cover any of the rodent damage to the wiring harness in Plaintiff Zishka's Class Vehicle.

55.    The damage caused to Plaintiff's Class Vehicles left her vehicle partially or completely inoperable.

56.    As a result of the damage to Plaintiff's wiring harness, she was required to incur out-of-pocket expenses and lost use of her vehicle for a number of days.

57.    Neither Toyota nor any of its agents, dealers, or other representatives informed Plaintiff about how the soy-based insulated wiring encourages rodents, such as rats, squirrels, and other pests to chew the soy-based insulated wiring prior to purchasing her Class Vehicle.

58.    Plaintiff received a copy of the Warranty upon purchasing her Class Vehicle. The Warranty "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota," except for certain limitations. *See* Ex. A. One category of limitations includes the following list: "airborne chemicals, tree sap, road debris (including stone chips), rail dust, salt, hail, floods, wind storms, lightening **and other environmental conditions**." *Id*. (emphasis added).

59.    Damage caused by rodents or other animals chewing on the soy-based insulated wiring is not an "other environmental condition" under the warranty. Alternatively, it is ambiguous under the Warranty whether damage caused by rodents is an "other environmental condition." Because no other exclusion applies to the Defect, the damage to Plaintiff's Class Vehicle was and should have been covered by the Warranty.

60.    Despite Plaintiff's request, Toyota refused to provide warranty coverage for the rodent damage to her Class Vehicle, which Toyota contends was not covered under the Warranty. Toyota knew or should have known of the aforesaid Defect at the time of sale, and it continues to have knowledge of the Defect and its breaches of its express Warranty. Yet, Toyota has intentionally failed to notify Plaintiff Zishka and members of the Class about the Defect.

## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following Class:

**Nationwide Class:**

All persons and entities in the United States who (a) currently own or lease a Class Vehicle with soy-based wiring insulation, and/or (b) previously owned or leased a Class Vehicle with soy-based wiring insulation, and can be identified as having incurred out-of-pocket expenses related to soy-based wiring insulation defect.

62.    Alternatively, Plaintiff proposes the following sub-class:

**Colorado Sub-Class:**

All persons and entities in Colorado who (a) currently own or lease a Class Vehicle with soy-based wiring insulation, and/or (b) previously owned or leased a Class Vehicle with soy-based wiring insulation, and can be identified as having incurred out-of-pocket expenses related to soy-based wiring insulation defect.

63.    All Classes are collectively referred to as the "Class." Excluded from the above classes are Toyota, its affiliates, subsidiaries, parents, successors, predecessors, any entity in which Toyota or its parents have a controlling interest; Toyota's current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Class; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the class and/or sub-class definitions based upon discovery and further investigation.

64.    **Ascertainability**: The Classes are defined in terms of objective characteristics and common transactional facts; namely, the purchase or lease of Class Vehicles containing the soy-based wiring Defect that resulted in rodent damage to Class Vehicle electrical wiring and electrical systems. Class membership will be readily ascertainable from Toyota's business records.

21

65.  **Numerosity**: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Toyota and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that many thousands of Class Members have been subjected to the conduct by Toyota herein alleged.

66.  **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a)   Whether Toyota engaged in the conduct alleged herein;

b)   Whether Toyota designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c)   Whether the Class Vehicles were defective in that they were sold with soy-based wiring insulation and other soy-based wiring parts or components;

d)   Whether Toyota knew of the Defect but failed to disclose the problem and its consequences to its customers;

e)   Whether a reasonable consumer would consider the Defect or its consequences to be material;

f)   Whether the Defect causes Class Vehicles to malfunction;

g)   Whether Toyota breached its warranties to Plaintiff and Class Members;

h)   Whether Toyota's conduct violates Colorado consumer protection statutes, warranty laws, and other laws as asserted herein;

i)   Whether Plaintiff and the other Class members overpaid for their Class Vehicles as a result of the Defect alleged herein;

> j)      Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and
>
> k)      Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

67.     **Typicality**: All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class Members were injured in the same manner by Toyota's uniform course of conduct described herein. Plaintiff and all Class Members have the same claims against Toyota relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Toyota's wrongful conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class Members.

68.     **Adequacy:** Plaintiff is an adequate representative for the Class because her interests do not conflict with the interests of the Class(es) that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in complex class action litigation – including consumer class actions – and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

69.     **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and all Class Members. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Toyota's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Toyota. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device

23

presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, the records (including databases, e-mails, etc.) Toyota maintains regarding sales and leases of Class Vehicles. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

70.     Toyota has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

71.     Given that Toyota has engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On Behalf of a Nationwide Class, or
in the Alternative, the Colorado Sub-Class,
pursuant to COLO. REV. STAT. §§ 4-2-313 and 4-2.5-210)**

72.     Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

73.     Plaintiff brings this Count on behalf of the Nationwide Class, or in the alternative, the Colorado Sub-Class.

74.     Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3) and "seller" of motor vehicles under section 4-2-103(1)(d).

75.     With respect to leases, Toyota was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

76.    The Class Vehicles are ad were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

77.    In its New Vehicle Limited Warranty and in advertisements, brochures, and through other statements, Toyota expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  For example, the following language appears in all Class Vehicle Warranty and Maintenance Guides:

### WHAT IS COVERED AND HOW LONG

**Basic Warranty**

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What Is Not Covered" . . . .

*See* Ex. A.

78.    Toyota's Warranty does not exclude rodent or animal damage of the type suffered by Plaintiff and Class members in their Class Vehicles.

79.    Toyota's Warranty as well as advertisements, brochures, and other statements regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

80.    Toyota breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

81.    In addition to Toyota's Warranty, Toyota otherwise expressly warranted the attributes, characteristics, and qualities of its Class Vehicles. These warranties are only a sampling of the numerous warranties that Toyota made relating to safety, reliability, and operation. Generally these express warranties promise heightened, superior, and state-of-the-art, reliability, safety, and performance standards, and promote the benefits of their Class Vehicles.  These

warranties were made, *inter alia*, in advertisements, on Toyota's website, and in uniform statements provided by Toyota to be made by salespeople, or made publicly by Toyota executives or by other authorized Toyota representatives.  These affirmations and promises were part of the basis of the bargain between the parties, and thus created express warranties.

82.    These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to Class Vehicle purchasers or lessees.  Toyota did not provide at the time of sale, and has not provided since then, Class Vehicles conforming to its express warranties.

83.    Toyota breached express warranties by selling to Plaintiff and Class Members Class Vehicles with soy-based wiring which Toyota knew or should have known attracts rodents and other pests and makes wiring in the Class Vehicles prone to rodent damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

84.    In addition, since Toyota knew or should have known about the Defect, the warranty failed its essential purpose.

85.    Furthermore, the limited warranty of repair and/or adjustments to defective parts also fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

86.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

87.    Toyota's attempts to disclaim or limit its express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances here.

88.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

89.    Also, as alleged in more detail herein, at the time that Toyota warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Toyota wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

90.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Toyota's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

91.    Toyota was provided notice of these issues and the Defect by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications (including Plaintiff's communications) sent by and from Class members.

92.    The intended failure to disclose the known Defect is malicious, and it was carried out by Toyota with willful and wanton disregard for the rights and economic interests of Plaintiff and Class Members.

93.    Due to Toyota's breach of warranties as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy for a revocation of acceptance of

the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed by law.

94.    Toyota was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by consumers and Class members before or within a reasonable amount of time after the allegations of Defect became public.

95.    As a direct and proximate result of Toyota's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

96.    Plaintiff and Class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

<div style="text-align:center">

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY**
**OF MERCHANTABILITY**
**(On Behalf of a Nationwide Class, or**
**in the Alternative, the Colorado Sub-Class,**
**pursuant to COLO. REV. STAT. §§ 4-2-313 and 4-2.5-212)**

</div>

97.    Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

98.    Plaintiff brings this Count on behalf of the Nationwide Class, or in the alternative, the Colorado Sub-Class.

99.    Toyota is a "merchant" as defined under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3) and "seller" of motor vehicles under § 4-2-103(1)(d).

100.   With respect to leases, Toyota was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

101.   The Class Vehicles are ad were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

102.

103.   A warranty that the Class Vehicles were in merchantable condition is implied by law.

104.   Toyota impliedly warranted that the Class Vehicles were of a merchantable quality.

105.   Toyota breached the implied warranty of merchantability because the Class Vehicles were not of a merchantable quality due to the defective soy-based materials and parts, and the associated problems caused by the Defect.

106.   Plaintiff and Class members' interactions with Toyota suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Toyota, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class members are intended third-party beneficiaries of contracts between Toyota and its authorized dealers, and specifically, of Toyota's implied warranties. Toyota's dealers are intermediaries between Toyota and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Toyota with respect to Plaintiff and Class members' purchases or leases of Class Vehicles. Toyota's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

107.   As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

108.   Toyota's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Toyota's Warranty limitations are unenforceable because Toyota knowingly sold a defective product without informing consumers about the Defect.

109.    Furthermore, the time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and that the soy-based insulated wiring systems would fail well before their useful lives.

110.    Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Toyota's conduct described herein.

111.    Toyota was provided notice of these issues by complaints lodged by consumers with NHTSA and elsewhere—which vehicle manufacturers like Toyota routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public.

## COUNT III
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.* ("MMWA")
### (On Behalf of a Nationwide Class)

112.    Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

113.    Plaintiff brings this claim on behalf of herself and the Nationwide Class.

114.    Plaintiff and Class Members are "consumers" as that term is defined under the MMWA. *See* 15 U.S.C. § 2301(3).

115.    The Class Vehicles are "consumer products" as that term is defined under the MMWA. *See id.* § 2301(1).

116.    Toyota is a "supplier" and "warrantor" as those terms are defined under the MMWA. *See id.* § 2301(4)-(5).

30

117.   Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

118.   Toyota's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. Section 2301(7) of the MMWA accounts for Toyota's implied warranties with respect to the Class Vehicles, which warranties Toyota cannot disclaim under the MMWA, when it fails to provide merchantable goods.

119.   As set forth above, Toyota breached its warranties with Plaintiff and Class Members.

120.   Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

*Id.*

121.   Class Vehicles contain soy-based wiring, wiring harnesses, and other soy-based or soy-containing parts, and share a common defect in or involving the wiring, as the soy in Class Vehicles attract rodents and other pests and are predisposed to rodent (or other animal) damage.

122.   Despite demands by Plaintiff and the Class for Toyota to pay the expenses associated with diagnosing and repairing the defective soy-based insulation and damaged wiring systems, Toyota has refused to do so.

123.   Toyota breached these specific warranties as described in more detail herein and also breached them generally: by manufacturing soy-based electrical wiring systems that are and

are likely to fail due to damage caused by rodents and other pests; by selling defective soy-based insulated wiring systems not in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose; by refusing to repair or replace, free of charge, the defective soy-based electrical wiring systems or any of their component parts; by forcing consumers to pay for out-of-pocket costs for diagnostics, labor, repair, and replacement parts; and by not curing the Defect once it was known and identified.

124.    Plaintiff's and Class Members' interactions with Toyota suffice to create privity of contract between Plaintiff and Class Members, on the one hand, and Toyota, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Toyota and its authorized dealers, and specifically, of Toyota's implied warranties. Toyota's dealers are intermediaries between Toyota and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Toyota with respect to Plaintiff and Class Members purchases or leases of Class Vehicles. Toyota's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

125.    Plaintiff and the other Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Toyota is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class Members have not re-accepted their Class Vehicles by retaining them.

126.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

127.    As a direct and proximate result of Toyota's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

128.    Plaintiff and Class Members are entitled to recover damages as a result of Toyota's breach of warranties.

129.    Plaintiff and Class Members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. §2301(d)(2).

## COUNT IV
## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### COLO. REV. STAT. §§ 6-1-101, *et seq.* ("CCPA")
### (On behalf of the Colorado Sub-Class)

130.    Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

131.    Plaintiff brings this claim on behalf of herself and the Colorado Sub-Class.

132.    The CCPA provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.

133.    Toyota participated in misleading, false or deceptive acts that violated the CCPA. By fraudulently advertising and selling Class Vehicles with the Defect as described herein, Toyota engaged in deceptive business practices prohibited by the CCPA.

134.    Toyota is a "Person" within the meaning of the CCPA. *See* COLO. REV. STAT. § 6-1-102(6).

135.    Plaintiff and Colorado Class members are "consumers" within the meaning of the CCPA. *See* COLO. REV. STAT. § 6-1-113(1)(a) who purchased or leased one or more Class Vehicles.

136.    Toyota's actions as set forth above occurred in the course of its business, vocation, or occupation. *Id*. § 6-1-105(1).

137.    In the course of its business, Toyota incorporated soy-based electrical wiring insulation and other soy-based or soy-containing wiring components in Class Vehicles that attract rodents and other pests which cause damage. Toyota concealed this Defect and otherwise engaged in activities with the tendency or capacity to deceive.  Toyota also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission, in connection with the sale of Class Vehicles containing the soy-based wiring Defect.

138.    Toyota has known of the Defect in Class Vehicles from complaints and communications by Plaintiff and Class members, but continued to conceal the Defect in order to make sales and leases of Class Vehicles.

139.    By willfully failing to disclose and actively concealing the Defect, by marketing Class Vehicles as reliable and of high quality, and by presenting itself as a reputable manufacturer that stood by its products after they were sold or leased when it in fact does not, Toyota engaged in unfair and deceptive business practices in violation of the CCPA.

140.    Toyota's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the Colorado Class, about the quality, workmanship, performance, safety, and true value of the defective Class Vehicles.

141.    Toyota intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Colorado Sub-Class.

142.    Toyota's conduct was and is violative of the CCPA specifically because Toyota:

  a.  Knowingly makes false representations as to the characteristics, ingredients, uses, benefits, alterations, or quantities of Class Vehicles;

  b.  Represents that Class Vehicles are of a particular standard, quality, or grade, or of a particular style or model, when Toyota knows or should know that they are of another;

  c.  Advertises Class Vehicles with intent not to sell them as advertised; and

  d.  Fails to disclose material information concerning Class Vehicles which information was known at the time of an advertisement or sale, and such failure to disclose such information was intended to induce the consumer to enter into a transaction.

COLO. REV. STAT. §§ 6-1-105(e), (g), (i), (u).

143. Toyota owed Plaintiff and the Colorado Sub-Class a duty to disclose the Defect in Class Vehicles and the true value of Class Vehicles because Toyota:

  a.  Possesses exclusive knowledge that its manufacturing process entailed the inclusion of defective and rodent-damage-prone soy-based wiring parts and components;

  b.  Intentionally concealed the foregoing from Plaintiff and the Colorado Sub-Class; and/or

  c.  Made incomplete, false or misleading representations about the characteristics, quality, workmanship, reliability, value, safety, efficiency, and performance of Class Vehicles while purposefully withholding material

facts from Plaintiff and the Colorado Sub-Class that contradicted these representations.

144.    Because Plaintiff and the Colorado Sub-Class overpaid for Class Vehicles due to Toyota's conduct described herein and because the Defect in Class Vehicles has caused Plaintiff and members of the Colorado Sub-Class to incur out-of-pocket expenses, they have suffered ascertainable loss as a direct and proximate result of Toyota's deceptive and unfair acts and practices in violation of the CCPA.

**COUNT V**
**UNJUST ENRICHMENT/RESTITUTION**
**(PLEADING IN THE ALTERNATIVE)**
**(On Behalf of a Nationwide Class, or**
**in the Alternative, the Colorado Sub-Class)**

145.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

146.    Plaintiff brings this Count on behalf of the Nationwide Class, or in the alternative, the Colorado Sub-Class.

147.    This claim is pled in the alternative to Plaintiff's warranty and other contract-based claims set forth above.

148.    As the intended and expected result of its conscious wrongdoing, Toyota has profited and benefited from Plaintiff and Class Members purchase of Class Vehicles.

149.    Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiff and the Class were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

150.    Toyota has been unjustly enriched by its deceptive conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiff and the Class at the expense of these parties.

151.     Equity and good conscience militate against permitting Toyota to retain these ill-gotten profits and benefits, and permitting Toyota to do so would be unjust and inequitable because of Toyota's misrepresentations and misconduct as against Plaintiff and Class Members, as alleged herein

152.     Plaintiff and members of the Class were injured as a direct and proximate result of Toyota's misrepresentations and omissions because they paid for or leased Class Vehicles would not have purchased (or would have paid less for) had they known the true facts.

153.     Because Toyota's retention of the non-gratuitous benefit conferred upon it by Plaintiff and the members of the Class is unjust and inequitable, Toyota must pay restitution to Plaintiff and members of the Class.

## COUNT VIII

### DECLARATORY RELIEF

**(PLEADING IN THE ALTERNATIVE)**
**(On Behalf of a Nationwide Class, or**
**in the Alternative, the Colorado Sub-Class)**

154.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

155.     Plaintiff brings this Count on behalf of the Nationwide Class, or in the alternative, the Colorado Sub-Class.

156.     This claim is pled in the alternative to the other claims herein.

157.     Toyota designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Class Vehicles that contain a material Defect as described above.

158.     An actual controversy, over which this Court has jurisdiction, now exists between Plaintiff and Toyota concerning their respective rights, duties and obligations for which Plaintiff desires a declaration of rights under the Class Vehicle warranties.

159.     Toyota warrants and advertises the reliability and workmanship of its Class Vehicles. Plaintiff contends that Toyota breached its warranties to Plaintiff and the Class

Members when they received Class Vehicles at the time of the purchase that were worth less than what was promised by Toyota's warranties.

160.    Toyota's Warranty explicitly warrants workmanship and does not disclaim or exclude the type of damage suffered in Class Vehicles as a result of the Defect in the Class Vehicles.

161.    Plaintiff seeks a declaration of the parties' respective rights, duties and obligations under the Class Vehicle warranties and other promises made by Toyota related to the quality and workmanship of the Class Vehicles, and specifically that Plaintiff and Class Members are entitled to recover their out-of-pocket expenses related to repairs and/or replacement (including labor costs) of their defective and unworkmanlike Toyota Class Vehicles under the Class Vehicle warranties.

162.    Specifically, Plaintiff seeks a declaratory judgment that Toyota's Warranty provides coverage for, and must be read to include coverage for, rodent and other animal damage in Class Vehicles resulting from the Defect as described herein. Plaintiff also seeks a declaratory judgment that nothing in Toyota's Warranty disclaims or excludes warranty coverage for the Defect described herein.

163.    A judicial declaration is necessary in order that Plaintiff and the Class Members may ascertain their rights and duties under Toyota's Class Vehicle warranties. At this time, Plaintiff and the Class Members have Class Vehicles that were defective upon lease or purchase, or continue to remain defective in design, materials and/or workmanship.

164.    Plaintiff and Class Members suffered damages at the time of their purchase or lease and have paid or will have to pay future repair and/or replacement costs as a direct result of the Defect in the Class Vehicles.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

(a)      Determine that this action is a proper class action, certifying Plaintiff as a class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as Class Counsel;

(b)      Award all actual, general, special, incidental, statutory, punitive and consequential damages to which Plaintiff and Class members are entitled;

(c)      Award pre-judgment and post-judgment interest on such monetary relief;

(d)      Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the Defect;

(e)      Award Plaintiff and Class members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(f)      Award such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial for all claims so triable.


Dated:  January 4, 2017

<div style="margin-left: 40%;">

Respectfully submitted,

SLAVIK LAW FIRM, LLC

By:     */s/ Donald H. Slavik*
        Donald H. Slavik


Donald H. Slavik (Colo. Bar No. 33860)
SLAVIK LAW FIRM, LLC
2834 Blackhawk Court
Steamboat Springs, CO 80487
Tel: (970) 457-1011
Fax: (267) 878-7697
E-mail: dslavik@slavik.us


*Attorneys for Plaintiff and the Proposed Class*

</div>